SOUTHWESTERN BELL
TELEPHONE, L.P., d/b/a
SBC TEXAS, Petitioner,

v.

HARRIS COUNTY TOLL ROAD
AUTHORITY and Harris
County, Respondents.

No. 06–0933.

Supreme Court of Texas.

Argued Jan. 15, 2008.

Decided April 3, 2009.

Robert E. Davis, Hughes & Luce, L.L.P., Danny S. Ashby, James A. Baker, Stanford Purser, K&L Gates LLP, Dallas, TX, Mike A. Hatchell, Susan A. Kidwell, Sarah B. Duncan, Locke Lord Bissell & Liddell, LLP, Austin TX, James D. Ellis, Alfred G. Richter Jr., Richard M. Parr, San Antonio, TX, Walter O. Theiss, David Charles Welsch, Dallas, TX, Elizabeth Kay Ferrell, Bellaire, TX, Amy Douthitt Maddux, Jonathan Bruce Smith, Shipley Snell Montgomery LLP, Houston, TX, Jon David Hensarling, Raleigh, NC, Timothy A. Whitley, Houston, TX, April Joy Rodewald, Dallas, TX, for Petitioner.

Michael A. Stafford, Harris County Atty., Bruce S. Powers, Assistant County Attorney, Houston TX, for Respondent.

David J. Schenck Jones Day, Dallas TX, Daniel L. Geyser, Office of the Attorney General of Texas, Austin TX, for Amicus Curiae, State of TX.

Chief Justice JEFFERSON delivered the opinion of the Court.

A telephone company that was forced to relocate its facilities due to road construction demanded reimbursement from the county and its toll road authority. Neither our statutes nor our constitution, however, authorize the relief sought. Because the utility has no vested property right to relocation of its facilities at county expense, and because the Legislature has not waived the governmental entities' immunity from suit, we affirm the court of appeals' judgment.

## I

### Background

Southwestern Bell ("SBC") provides local telephone service in Harris County and throughout Texas. SBC maintains underground telecommunications facilities in the public right-of-way along the Westpark Tollway (formerly Westpark Road) pursuant to section 181.082 of the Texas Utilities Code. *See* TEX. UTIL.CODE § 181.082 ("A telephone ... corporation may install a facility of the corporation along, on, or across a public road, a public street, or public water in a manner that does not inconvenience the public in the use of the road, street, or water.").

When the Harris County Toll Road Authority and Harris County ("Harris County") began construction of the Westpark Tollway in 2001, they required SBC to relocate its facilities in the right-of-way along Westpark Road. SBC did so and

billed the county for its costs. Harris County refused to pay, and this suit followed. In the trial court, SBC asserted both a claim for reimbursement under Transportation Code section 251.102 and a claim for inverse condemnation under article I, sections 17 and 19 of the Texas Constitution. *See* TEX. CONST. art. I, §§ 17, 19; TEX. TRANSP. CODE § 251.102. The parties filed cross-motions for summary judgment, and the trial court denied Harris County's motion and granted SBC's. The court of appeals reversed, holding that Harris County was immune from suit on the statutory claim and that SBC had no vested property interest in the right-of-way for the purposes of article I, section 17 of the Texas Constitution. 263 S.W.3d 48, 52. We granted SBC's petition for review.[1] 51 Tex. Sup.Ct. J. 77 (Nov. 2, 2007).

## II

### SBC's Takings Claim[2]

■ SBC contends that it is entitled to compensation for its relocation expenses under article I, section 17 of the Texas Constitution, which provides that "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person...." TEX. CONST. art. I, § 17. Governmental immunity "does not shield the State from an action for compensation under the takings clause." *Gen. Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex.2001). To recover on an inverse condemnation claim, a property owner must establish that "(1) the State intentionally performed certain acts, (2) that resulted in a 'taking' of property, (3) for public use." *Id.* Although the first and third elements are present here, Harris County asserts, and the court of appeals held, that SBC does not have a vested property interest in the public right-of-way on which its facilities are located. We conclude that whatever interest SBC has, that interest did not include the right to require the county to pay for relocation of its facilities.

### A

### Common–Law Rule

The United States Supreme Court, in a case similar to this one, rejected a takings claim brought by a gas company forced to relocate its pipes to accommodate improvements to the city's drainage system.

The gas company, by its grant from the city, acquired no exclusive right to the location of its pipes in the streets, as chosen by it, under a general grant of authority to use the streets. The city made no contract that the gas company should not be disturbed in the location chosen. In the exercise of the police power of the State, for a purpose highly necessary in the promotion of the public health, it has become necessary to change the location of the pipes of the gas company so as to accommodate them to the new public work. In complying with this requirement at its own expense none of the property of the gas company has been taken, and the injury sustained is *damnum absque injuria.*

*B.L.D.*, 113 S.W.3d 340, 349 (Tex.2003). Because there is some overlap between SBC's takings claim and Harris County's alleged immunity, and because SBC's waiver-of-immunity claim fails for the reasons discussed below, we address the issues in reverse order.

---

1. The State of Texas and GTE Southwest Incorporated d/b/a Verizon Southwest submitted amicus curiae briefs.

2. As a rule, we decide constitutional questions only when we cannot resolve issues on non-constitutional grounds. *In the Interest of*

*New Orleans Gas Light Co. v. Drainage Comm'n of New Orleans,* 197 U.S. 453, 462, 25 S.Ct. 471, 49 L.Ed. 831 (1905).[3]

■ Thus, under the "long-established common law principle ... a utility forced to relocate from a public right-of-way must do so at its own expense." *Norfolk Redevelopment & Hous. Auth. v. Chesapeake & Potomac Tel. Co.,* 464 U.S. 30, 34, 104 S.Ct. 304, 78 L.Ed.2d 29 (1983). We have said that "[i]n the absence of assumption by the state of part of the expense, it is clear that [utility companies] could be required to remove at their own expense any installations owned by them and located in public rights of way whenever such relocation is made necessary by highway improvements." *State v. City of Austin,* 160 Tex. 348, 331 S.W.2d 737, 741 (1960); *see also* 2–28 SANDRA M. STEVENSON, ANTIEAU ON LOCAL GOVERNMENT LAW, § 28.09[3] (2d ed. 2008) ("Under the traditional common law rule, and in the absence of an agreement or statute to the contrary, whenever state or local authorities make reasonable requests of a public utility to relocate, remove or alter its structures or facilities, the utility must bear the cost of doing so, even though the public utility may be operating pursuant to franchise from the local government.").

**B**

**Utility Code Section 181.082**

SBC argues that, notwithstanding this general rule, the statutory permission for it to "install a facility ... in a manner that does not inconvenience the public in the use of the road, street, or water," TEX. UTIL.CODE § 181.082, grants it a property interest on which a takings claim may be based. While we have characterized a

railroad's interest granted by a local franchise as an "easement" for taxation purposes, *Tex. & Pac. Ry. Co. v. City of El Paso,* 126 Tex. 86, 85 S.W.2d 245, 248 (1935), that does not answer whether SBC's interest, arising from section 181.082, gives rise to its compensable takings claim. According to SBC, this statute, originally enacted in 1874, granted telephone companies "[i]n effect, ... a private easement." But, as a noted treatise recognizes:

> The authorization to maintain rails, etc., in a particular part of the highway is not an easement or any other estate or interest in the land so occupied. On the contrary, it is merely a license to share in the public easement, and consequently a corporation maintaining rails, pipes, and wires in a public highway is not entitled to compensation for an invasion under legislative authority of the portion of the highway occupied by its structures. Consequently, this license may not be arbitrarily revoked as long as the highway remains public, and the enjoyment thereof cannot be interfered with for purely private ends. *Yet when the continued undisturbed existence of the licensed structure does interfere with some other public need, the disturbance or removal of the structures or an alteration of their location is not a taking or even a damaging of property.* The permission to use the highway for such structures has been granted upon an implied condition that the structures shall not interfere, either at the time that they are placed in position or thereafter, with any other public use to which the legislature sees fit to devote the way. When the condition takes effect, the privilege ceases to exist; it is not

**3.** *Damnum absque injuria,* or *damage sine injuria,* means a "[l]oss or harm that is incurred from something other than a wrongful act

and occasions no legal remedy." BLACK'S LAW DICTIONARY 420–21 (8th ed.2004).

taken or damaged. To hold otherwise and to say that whenever, under the statutory permission, a gas pipe is laid in a public way the pipe cannot be disturbed, even to make such changes as are required by public travel, is to make what is merely a subordinate use paramount to the great important use for which the land is taken.

2–5 Julius L. Sackman, Nichols on Eminent Domain § 5.03[5][e] (3d ed. 2006) ("Nichols On Eminent Domain") (emphasis added and citations omitted); *see also W. Union Tel. Co. v. Tarrant County*, 450 S.W.2d 763, 765–66 (Tex.Civ.App.-Fort Worth 1970, writ ref'd n.r.e.) (rejecting telegraph company's takings claim, despite the fact that lines had been installed forty-three years earlier pursuant to section 181.082's predecessor; right to use the streets was a "permissive right" not a "vested" one, and utility had to bear its own relocation costs).

█ We recognized as much in 1913, when we held that the limiting language in the grant to telephone companies was "qualified by this important language, 'in such manner as not to incommode the public in the use of such road, streets and waters.'" *Brownwood v. Brown Tel. & Tel. Co.*, 106 Tex. 114, 157 S.W. 1163, 1165 (1913). We concluded that "[t]he effect of the limiting clause is to declare the right of the public to be superior to the rights granted to the corporation." *Id.* "The main purposes of roads and streets are for travel and transportation, and while public utilities may use such roads and streets for the laying of their telegraph, telephone and water lines, and for other purposes, such uses are subservient to the main uses and purposes of such roads and streets." *City of San Antonio v. Bexar Metro. Water Dist.*, 309 S.W.2d 491, 492 (Tex.Civ. App.-San Antonio 1958, writ ref'd). When a telephone company installs its lines pursuant to the statutory grant, "there is an implied condition that the facilities shall not interfere with the public use, either at the time they are placed in position or thereafter." *City of Grand Prairie v. Am. Tel. & Tel. Co.*, 405 F.2d 1144, 1146 (5th Cir.1969) (noting that rule requiring utilities to relocate at their own expense is "generally accepted as the prevailing view").

SBC asserts that telephone companies are different from other utilities, pointing to section 181.082's silence on relocation costs, and cites other statutes explicitly requiring utilities to pay relocation costs in certain situations. *See, e.g.,* Tex. Util. Code §§ 181.025(b) (relocation of gas facility), 181.046(b) (relocation of electric lines). There are also statutes, however, mandating the converse. *See, e.g.,* Tex. Transp. Code § 227.029(*l*) (providing that "the department, as part of the cost of the project, shall pay the cost of the relocation ... of a public utility facility"); *id.* § 251.103 (providing that "a county may pay for relocation of a water line" under certain circumstances, provided the water district agrees to repay the funds within twenty years and with interest). Regardless, the statute's silence on relocation costs would mean that the common law rule applied, not that the county was responsible for relocation costs. Moreover, none of our cases supports the distinction SBC proposes. If telephone companies were somehow different, we would not have said in *City of Austin*—a case in which Southwestern Bell Telephone Company was a respondent-that "[i]t is clear that respondents could be required to remove at their own expense any installations owned by them and located in public rights of way whenever such relocation is made necessary by highway improvements." *City of Austin*, 331 S.W.2d at 741.

The State, as amicus curiae, contends that Texas law has authorized telegraph and telephone companies to use public roads for 136 years, and never in that time has there been a single decision under section 181.082 (or its predecessors) concluding that such utilities have a right in the public roads that is compensable under the Texas Constitution. Southwestern Bell's contentions, according to the State, would create a "newly minted property right." Based on the authorities outlined above, we agree. Under the traditional common-law rule—a rule unaltered by section 181.082–SBC would be required to bear its own relocation costs.

## C

### Transportation Code Section 251.102

SBC contends, however, that this rule does not apply when another statute "pointedly requires" a governmental entity to pay relocation costs. That, SBC argues, is the case with section 251.102. We have held, however, that "if a statute creates a liability unknown to the common law, or deprives a person of a common law right, the statute will be strictly construed in the sense that it will not be extended beyond its plain meaning or applied to cases not clearly within its purview." *Satterfield v. Satterfield,* 448 S.W.2d 456, 459 (Tex.1969). This is one such case.

■ In its current form, section 251.102 provides that "[a] county shall *include* the cost of relocating or adjusting an *eligible* utility facility in the expense of right-of-way acquisition." TEX. TRANSP. CODE § 251.102 (emphasis added). "Eligible" is undefined, and the Fifth Circuit noted its ambiguity in this context. *CenterPoint Energy Houston Elec. LLC v. Harris County Toll Road Auth.,* 436 F.3d 541, 545 (5th Cir.2006), *cert. denied,* 548 U.S. 907, 126 S.Ct. 2945, 165 L.Ed.2d 956 (2006)

(noting that "we have examined the statute, as noted above, and find that the words 'eligible utility facility' remain ambiguous"). Originally enacted in 1963 as former article 6674n–3, the statute provided that "[i]n the acquisition of all highway rights-of-way by or for the Texas Highway Department, the cost of relocating or adjusting *utility facilities which cost may be eligible under the law* is hereby declared to be an expense and cost of right-of-way acquisition." Act of May 16, 1963, 58th Leg., R.S., ch. 240, § 1, 1963 Tex. Gen. Laws 654, 654 (emphasis added). The emergency provision of that Act stated that it was necessary "in order to clarify existing law as to the proper classification of costs incurred for the relocation or adjustment of utility facilities as a part of the acquisition of right-of-way." *Id.* § 4.

The statute was passed apparently in response to *Hardin County v. Trunkline Gas Co.,* 311 F.2d 882, 884 (5th Cir.1963), in which the court held that a county "was not obligated, indeed could not legally obligate itself, to pay" costs incurred by a gas company forced to extend the casing enclosing its pipelines when the state widened the highways. The Fifth Circuit held that the gas company's claim was not "a legal claim," as the county was not authorized "to contract to improve, construct or reconstruct a State highway . . . [and was] expressly prohibited from expending county funds therefor." *Id.* at 883, 885. While the gas company's petition for writ of certiorari was pending, the Legislature passed what is now section 251.102. *Trunkline Gas Co. v. Hardin County,* 375 U.S. 8, 8, 84 S.Ct. 49, 11 L.Ed.2d 38 (1963) (granting certiorari and vacating judgment, noting that "it appear[s] that the State of Texas has passed a statute in connection with controversies of this kind since the petition for a writ of certiorari was filed in this Court"). On remand, the Fifth Circuit held that the newly enacted

statute did not change the result, because "[t]he Legislature cannot, by curative statute, appropriation, or otherwise, authorize payment under a contract made without authority of law." *Hardin County v. Trunkline Gas Co.*, 330 F.2d 789, 793 (5th Cir.1964).

When the 68th Legislature adopted the County Road and Bridge Act (former Article 6702–1) in 1983, article 6674n–3 was the source law for section 4.303 of the new law, which stated that "[t]he county should include the cost of relocating or adjusting *eligible* utility facilities in the expense of right-of-way acquisition. (V.A.C.S. Art. 6674n–3.)." Act of May 20, 1983, 68th Leg., R.S., ch. 288, § 1, 1983 Tex. Gen. Laws 1431, 1489 (emphasis added). In 1995, section 4.303 was codified, without substantive change, as section 251.102 of the Texas Transportation Code. Act of May 1, 1995, 74th Leg., R. S., ch. 165, § 1, 1995 Tex. Gen. Laws 1025, 1159, 1871 (now codified at Tex. Transp. Code § 251.102).

In one of only two decisions interpreting section 251.102,[4] the Fifth Circuit, in an *Erie*[5] guess about Texas law, held that "eligible utility facility" meant "eligible under the law," which equated to a statutory right to reimbursement that operated prospectively, dealt with a matter in which the public has a real and legitimate interest, and was not fraudulent, arbitrary or capricious, based on our decision in *City of*

*Austin. Centerpoint*, 436 F.3d at 549–50. *City of Austin*, however, involved a different statute—and one in which "eligible" was clearly defined. *City of Austin*, 331 S.W.2d at 740. The relevant statute in that case (passed six years before what is now section 251.102) provided that utilities required to relocate as part of the improvement of highways established as part of the National System of Interstate and Defense Highways, would do so "at the cost and expense of the State ... provided that such relocation was eligible for Federal participation." Act of May 23, 1957, 55th Leg., R. S., ch. 300, § 4A, 1957 Tex. Gen. Laws 724, 729, *repealed by* Acts 1995, 74th Leg., ch. 165, § 24(a), 1995 Tex. Gen. Laws 1031, 1970 (current version at Tex. Transp. Code § 203.092(a)(1)). The statute was passed

> for the purpose of securing the benefits of the Federal–Aid Highway Act of 1956, which authorize[d] the use of Federal funds to reimburse the state for the cost of relocating utility facilities in the same proportion as such funds are expended on a given project, with the proviso that Federal money shall not be used for that purpose when payment to the utility violates either state law or a legal contract between the utility and the state.

*City of Austin*, 331 S.W.2d at 740 (citing U.S.C. § 123).[6]

---

**4.** The second is the court of appeals' decision in this case. 263 S.W.3d 48.

**5.** *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

**6.** Texas was one of sixteen states to pass such a statute in response to the Federal–Aid Highway Act of 1956. The Act had originally been intended to reimburse utility relocation costs only in those states in which, by statute or practice, the common law rule had been altered. *Norfolk Redevelopment & Hous. Auth. v. Chesapeake & Potomac Tel. Co.*, 464 U.S. 30, 39, 104 S.Ct. 304, 78 L.Ed.2d 29 (1983)

("The question of utility reimbursement was, thus, left to the laws of the individual States, with no congressional displacement of those laws."). Instead, sixteen states responded to the Act by passing legislation authorizing reimbursement of utility relocation costs whenever a project was eligible for federal reimbursement. *Id.* at 40 n. 17, 104 S.Ct. 304. The Senate Public Works Committee expressed concern over this "drastic change in existing practices," noting that " 'the use of Federal funds for reimbursement to the States for this purpose will increase substantially, thereby reducing the amount of Federal funds available for construction of highways.' " S.

The utilities' (Southwestern Bell Telephone Company among them) eligibility for reimbursement was undisputed; the only issue we considered was whether the State's payment of relocation costs would be an unconstitutional donation for a private purpose. We concluded that it would not be and, in doing so, noted:

> In the absence of assumption by the state of part of the expense, it is clear that respondents could be required to remove at their own expense any installations owned by them and located in public rights of way whenever such relocation is made necessary by highway improvements.... While public utilities may use [roads and streets] for laying their lines, such use is subject to reasonable regulation by either the state, the county or the city, as the case may be. The utility may always be required, in the valid exercise of the police power by proper governmental authority, to remove or adjust its installations to meet the needs of the public for travel and transportation
>
> ....
>
> Compensation is not required to be made for damage or loss resulting from a valid exercise of the police power.

*Id.* at 741–43; *see also id.* at 746 (noting that "[n]o part of the expense will be paid by the state, of course, if the relocation is not eligible for Federal participation"). In concluding that the reimbursement of relocation costs was not an unconstitutional gift, we relied on three factors: the statute operated prospectively, dealt with a matter in which the public had a real and legitimate interest, and was not fraudulent, arbitrary, or capricious. *Id.* at 743.

In *CenterPoint*, the Fifth Circuit examined these three factors to conclude that the relocation costs were *eligible*, rather than *constitutional*—a rationale the court of appeals in this case then adopted. *CenterPoint*, 436 F.3d at 549–50; 263 S.W.3d at 58–60. Harris County asserts-and the State agrees—that the Fifth Circuit's interpretation is incorrect. Instead, Harris County argues, "eligible utility facility" in section 251.102 means that the project in question is eligible for federal participation or the utility has a compensable property interest in the land occupied by the utility, based on the current version of the statute we construed in *City of Austin* and the caselaw at the time section 251.102 was originally enacted. *See* Tex. Transp. Code § 203.092(a)(1) and (2) (providing that a "utility shall make a relocation ... at the expense of this state if ... relocation of the utility facility is required by improvement of a highway in this state established ... as part of the National System of Interstate and Defense Highways and the relocation is *eligible* for federal participation" or "the utility has a compensable property interest in the land occupied by the facility to be relocated") (emphasis added); *City of Austin*, 331 S.W.2d at 746 (reimbursement required if relocation was eligible for federal participation); *Magnolia Pipe Line Co. v. City of Tyler*, 348 S.W.2d 537, 543 (Tex.Civ.App.-Texarkana 1961, writ ref'd) (reimbursement required if utility had purchased easements from private owners).

Harris County's argument is plausible, if too narrow. Section 251.102 does not define what is "eligible"; it merely states that counties shall include relocation costs for such facilities. Other statutes clearly speak to the subject. As noted, relocation costs must be paid if the relocation "is

REP. NO. 1407, 85th Cong., 2d Sess., 28 (1958); *Norfolk Redevelopment*, 464 U.S. at

40, 104 S.Ct. 304.

eligible for federal participation," if "the utility has a compensable property interest in the land occupied by the facility to be relocated," or, under certain circumstances, if the project involves improvement of "a segment of the state highway system that was designated by the commission as a turnpike project or toll project before September 1, 2005." TEX. TRANSP. CODE § 203.092(a)(1), (2), and (3). Yet another statute provides for discretionary reimbursement by the highway department if the commission finds that relocation is essential to the timely completion of the project, continuous utility service is essential to the public well-being, the utility's ability to operate would be adversely affected if it paid the relocation cost, and the utility and the department agree regarding appropriate safeguards, minimization of disruption, and choice of contractors. *Id.* § 203.0921. Still another provides that "a county may pay for relocating a water line" under certain circumstances, provided the water district agrees to repay the funds within twenty years and with interest. *Id.* § 251.103. Section 203.094, dealing with timely relocations, speaks to a utility that is "eligible for reimbursement under section 203.092 or that is eligible for reimbursement under applicable law and the policies of the department for the cost of relocating facilities." *Id.* § 203.094. Each of these statutes describes various scenarios under which utilities might be eligible for reimbursement of relocation costs.

These laws indicate that, when the Legislature has determined that the government should pay a utility's relocation costs, the statutes clearly delineate classes of relocations that are eligible for reimbursement. By contrast, section 251.102 con-

tains no such definition. If the Legislature intended for counties to pay all utility relocation costs, it would have been a simple matter to so state. *See, e.g.*, TEX. TRANSP. CODE § 227.029(*l*) (providing that "the department, as part of the cost of the project, shall pay the cost of the relocation ... of a public utility facility"); *id.* § 366.171 (stating that regional tollway authorities "shall pay the cost of relocation" of a "public utility facility"); *id.* § 370.170(h) (regional mobility authority "shall pay the cost of relocation" of a "public utility facility"). Instead, the statute provides only that the county "include" relocation cost in acquisition expenses, and only for those utilities that are "eligible." *Id.* § 251.102. SBC's relocation costs in this case are not clearly within the statute's purview, and SBC cites no other provision that would make it "eligible." [7] *Satterfield*, 448 S.W.2d at 459.

SBC asserts that Harris County ignores the "equities of requiring toll road users, rather than the general public, to pay the true costs of constructing a toll road." While requiring reimbursement of utility relocation costs for toll roads may be the better policy, that is a decision for the Legislature. Moreover, mandating reimbursement under section 251.102 would mean that all counties would have to reimburse all utility relocation costs for all acquisition projects, not just toll roads. Absent a clearer indication from the Legislature, we cannot conclude that this is what the statute requires.

### D

### Ad Valorem Taxation

SBC also argues that if its facilities are property for purposes of ad valorem taxation, they are property for purposes of a

---

7. In light of our conclusion on this issue, we do not reach Harris County's argument that section 251.102 is inapplicable because the county did not "acquire" any property in connection with this construction project.

takings claim. *See City of Fort Worth v. Sw. Bell Tel. Co.*, 80 F.2d 972, 975 (5th Cir.1936) (concluding that "[i]f the right to maintain the company's poles, wires, and conduits ... is property for purposes of protection, it is property for purposes of taxation"). The court of appeals, however, correctly noted that *City of Fort Worth* involved taxation, not inverse condemnation, and that the case "expressly recognized that the predecessor to section 181.082 at issue in that case reserved 'a supervision through the municipality as to the placing and alteration of the [utility's] fixtures.' " 263 S.W.3d at 68 n. 13 (quoting *City of Fort Worth*, 80 F.2d at 976); *see also W. Union*, 450 S.W.2d at 766 (holding that telegraph company had to relocate at its own expense; authorities cited regarding ad valorem taxation were inapposite). Thus, while SBC has a property interest in its facilities, that interest is subject to the terms of the original grant. When, under a valid exercise of the police power, the facilities inconvenience the public, they must be moved at SBC's expense. While our answer might be different if SBC faced the complete removal of its facilities, rather than their relocation, that is not the case here. *See, e.g.*, 2–5 NICHOLS ON EMINENT DOMAIN § 5.03 ("Where the change requires not merely the relocation of the facilities, but the complete removal of the facilities from the right of way, compensation must be made."); *City of Louisville v. Cumberland Tel. & Tel. Co.*, 224 U.S. 649, 659, 32 S.Ct. 572, 56 L.Ed. 934 (1912) ("It is claimed that in consequence of these laws the street rights granted the Ohio Valley Telephone Company have been withdrawn, or at least made subject to municipal revocation.").

## III

### SBC's Statutory Claim

 Many of the same reasons apply to bar SBC's direct claim under the stat-ute. SBC contends that section 251.102 waives Harris County's governmental immunity and requires reimbursement of relocation costs. But as we have often noted, the Legislature is best positioned to waive or abrogate sovereign immunity "because this allows the Legislature to protect its policymaking function." *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 854 (Tex.2002) (citations omitted) (collecting cases). Any such waiver must be clear and unambiguous. TEX. GOV'T CODE § 311.034 ("In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language."); *Tooke v. City of Mexia*, 197 S.W.3d 325, 328–29 (Tex.2006).

As outlined above, section 251.102 falls short of meeting these exacting demands. While we have on rare occasions found waiver of sovereign immunity absent "magic words," we have required clear indications of legislative intent to waive immunity under these circumstances:

First, a statute that waives the State's immunity must do so beyond doubt, even though we do not insist that the statute be a model of "perfect clarity." For example, we have found waiver when the provision in question would be meaningless unless immunity were waived.

Second, when construing a statute that purportedly waives sovereign immunity, we generally resolve ambiguities by retaining immunity.

. . . .

Finally, we are cognizant that, when waiving immunity by explicit language, the Legislature often enacts simultaneous measures to insulate public re-

sources from the reach of judgment creditors. Therefore, when deciding whether the Legislature intended to waive sovereign immunity and permit monetary damages against the State, one factor to consider is whether the statute also provides an objective limitation on the State's potential liability.

*Wichita Falls State Hospital v. Taylor,* 106 S.W.3d 692, 697–98 (Tex.2003) (citations omitted).

We recently confronted a similar issue in *Texas Department of Transportation v. City of Sunset Valley,* 146 S.W.3d 637, 642 (Tex.2004). That case involved Transportation Code section 203.058(a), which provides:

> If the acquisition of real property, property rights, or material by the department [of transportation] from a state agency under this subchapter will deprive the agency of a thing of value to the agency in the exercise of its functions, *adequate compensation* for the real property, property rights, or material *shall be made.*

TEX. TRANSP. CODE § 203.058(a) (emphasis added). We determined that section 203.058 did not waive governmental immunity. *Sunset Valley,* 146 S.W.3d at 642–43. As we observed, the statute's language did not clearly indicate the Legislature's intent to waive immunity, but instead merely required the Department of Transportation to make "adequate compensation" using certain accounting procedures. *Id.* at 642. (citations omitted). And while "the statute imposes a financial obligation on the State," this "does not in itself mean that the Legislature intended to create a private right of action, as evidenced by the fact that the statute expressly vests the power to determine adequate compensation in the General Land Office." *Id.* at 642–43. Further, the statute was not meaningless without a waiver of immunity

because it "provide[d] a mechanism by which state agencies may ensure budgetary protection when property is transferred between them." *Id.* at 643.

SBC has not argued that section 251.102 contains "magic words," but rather that it requires reimbursement of utility relocation costs and thus necessarily waives immunity. But as discussed above, section 251.102 does not clearly require that SBC be reimbursed, nor, as the court of appeals correctly observed, is the statute meaningless absent a waiver of immunity:

> The statute merely states that a county, at the time it acquires a right-of-way to accommodate county road construction, must include the cost of relocating eligible utility facilities as part of its expense in acquiring the right-of-way. That is, the county must budget not only for the cost of acquiring the right-of-way, but it must also earmark funds to be paid to eligible utilities should they relocate their facilities to accommodate road construction. Section 251.102's requirement that funds be earmarked is a less apparent expression of a private right of action than that found lacking by the Texas Supreme Court in *Sunset Valley. Compare* TEX. TRANSP.CODE ANN. § 203.058(a) ("[A]dequate compensation for the real property ... *shall be made.*") (emphasis added) *with id.* § 251.102 ("A county *shall include the cost* of relocating ... an eligible utility facility in the expense of right-of-way acquisition.") (emphasis added).

263 S.W.3d at 63. The Legislature may require counties to earmark funds for a particular purpose without necessarily creating a private right of action, because, for example, it expects counties to comply, or because it considers the costs of litigation overly burdensome. *See, e.g., Reata Constr. Corp. v. City of Dallas,* 197 S.W.3d 371, 375 (Tex.2006). And, as explained

more fully above in our "takings" analysis, when we compare those statutes that explicitly provide for relocation reimbursements, the Legislature regularly attaches specific criteria that are absent here. *See Wichita Falls State Hosp.,* 106 S.W.3d at 697–98.

SBC nevertheless contends that our precedent supports a reimbursement action like this one. In *City of Austin,* 331 S.W.2d at 742, we considered whether a statute requiring reimbursement of certain utility relocation costs was an unconstitutional gift or donation. SBC contends that we would not have reached the merits in that case if the State had been immune from suit. *City of Austin,* however, did not address the state's immunity from suit, as it was a declaratory judgment action filed *by* the state. *Id.* at 740. Moreover, although the Fifth Circuit's recent decision in *CenterPoint,* 436 F.3d 541, discussed reimbursement of utility relocation costs pursuant to the same statute at issue here, that case did not discuss immunity, as Harris County waived immunity from suit under that court's "waiver-by-removal" rule. *See CenterPoint,* 436 F.3d at 543; *Meyers v. Tex.,* 410 F.3d 236, 256 (5th Cir.2005).

Because section 251.102 does not clearly waive governmental immunity, and because Harris County has not otherwise waived its immunity from suit, SBC's statutory reimbursement claim is barred.

## IV

### Conclusion

We affirm the court of appeals' judgment. Tᴇx.R.Aᴘᴘ. P. 60.2(a).