**Reversed and Rendered and Memorandum Opinion filed May 30, 2024**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

### NO. 14-22-00597-CV

**STATE OF TEXAS, Appellant**

**V.**

**FRANK'S NURSERY, LLC, Appellee**

**On Appeal from the 458th District Court
Fort Bend County, Texas
Trial Court Cause No. 21-DCV-281119**

## MEMORANDUM OPINION

The State of Texas brings this interlocutory appeal from the trial court's denial of its motion to dismiss for want of jurisdiction. Tex. Civ. Prac. & Rem. Code § 51.014(a)(8). In five issues the State argues that the trial court lacks jurisdiction over Frank's Nursery, LLC's claims. We reverse and render.

BACKGROUND

The State and Fort Bend County entered into an agreement to make certain improvements along FM 359 and US Highway 90A in Fort Bend County. Pursuant to this agreement, the County was to acquire parcels necessary for the project. Under the agreement, the State was to reimburse the County for ninety percent of all eligible costs. The State retained a third-party company to assist with negotiation, title, and relocation assistance for the properties being acquired.[1]

Frank's Nursery owned real property in Fort Bend County that was to be acquired for the expansion of US Highway 90A. In early 2016, the third-party company sent an offer letter to Frank's Nursery for the real property. The offer letter indicated it was making an offer based on the appraisal done by the County stating "[t]his amount is the total amount of just compensation for all interests in the portion of your property to be acquired." The offer letter also listed out various items of improvements included in the appraised amount. The offer letter stated that Frank's Nursery:

> [M]ay be entitled to additional payments and services under the State's Relocation Assistance Program. It is emphasized, however, that any benefits to which you may be entitled under this program will be handled entirely separate from and in addition to this transaction. You will receive a brochure entitled "Relocations Assistance" which will inform you of eligibility requirements, payments and services which are available.

The County filed a statutory condemnation lawsuit to acquire the real property that was later settled by Rule 11 Agreement. The Rule 11 Agreement provided for compensation for the real property and indicated that Frank's Nursery "is not

---

[1] The State indicates the County retained the third-party, but Frank's indicates the State retained the third party. For purposes of this opinion, the distinction is not important. However, we note the factual disagreement.

hereby waiving and [sic] relocation benefits in addition to the settlement amount stated above." The agreed judgment rendered by the trial court in the statutory condemnation lawsuit provided similarly: "[Frank's Nursery] is not hereby waiving relocation benefits in addition to the settlement amount stated above." The compensation under the Rule 11 Agreement was paid by check to Frank's Nursery in mid-July 2016. The agreed judgment was rendered by the trial court in August 2016.

In 2021, Frank's Nursery filed suit against the State alleging breach of contract, a claim for relocation expenses under the Property Code, and seeking declaratory relief.[2] Frank's Nursery's amended petition alleged that "[t]he parties agreed that relocation would be paid apart from the condemnation settlement." Frank's further alleged that it provided "substantial information to support its claim for relocation, but Defendants continued to delay, obfuscate, and avoid responding to the claim." Frank's Nursery alleged that the State denied its relocation claim because a deadline had passed and the claim and supporting documentation was submitted too late. Frank's Nursery alleged that the Rule 11 Agreement, "as well as the correspondence and mutual understanding between the parties subject thereto, established that Frank's Nursery was entitled to and would be paid additional funds for relocation necessitated by the acquisition." Frank's Nursery alleged that the State breached the Rule 11 Agreement "by failing and refusing to compensate [Frank's Nursery] for relocation." Frank's Nursery also asserted that it "did not exhaust the administrative remedies provided by the Relocation Advisory service because Frank's Nursery was purposely never made aware it needed to apply to the relocation Advisory Service for payment by Defendants."

---

[2] Frank's also sued the County and the third-party company, but those claims are not at issue in this appeal.

The State filed a motion to dismiss for want of jurisdiction arguing that Frank's Nursery failed to plead any facts sufficient to demonstrate a waiver of sovereign immunity and requesting that the trial court dismiss the cause of action against it on those grounds. The State also argued that Frank's Nursery did not demonstrate waiver of immunity for the alleged breach of contract and that Frank's Nursery failed to exhaust its administrative remedies.

Frank's Nursery filed a response arguing that "as part of the [Rule 11 Agreement], the [State] recognized the need and obligation to compensate Frank's Nursery for relocation assistance. The parties agreed that relocation would be paid apart from the condemnation settlement." Frank's Nursery further contended that it was a property owner who was permanently displaced from its business under section 21.046(e) of the Property Code. *See* Tex. Prop. Code § 21.046(e). Frank's Nursery alleged that while it may have been entitled to relief through the Relocation Advisory Service, because of the State's actions, Frank's Nursery's claim for reimbursement was time barred. Frank's Nursery argued that sovereign immunity was also waived based on the "underlying condemnation suit" because the claims here are "germane to, connected with, and properly defensive to" the claims the State asserted against Frank's Nursery in the condemnation lawsuit.

Without conducting a hearing, the trial court denied the State's motion to dismiss without stating the reasons therein. This interlocutory appeal followed.

### STANDARD OF REVIEW

Whether a court has subject matter jurisdiction is a question of law. *Tex. Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We review de novo whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction. *Id*. "When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that

4

affirmatively demonstrate the court's jurisdiction to hear the cause." *Id.* We construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent. *Id.*

"If the plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do so." *Id.* at 227. If the evidence creates a fact issue regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder. *Id.* If after the State asserts and supports with evidence that the trial court lacks subject matter jurisdiction, we simply require the plaintiffs, when the facts underlying the merits and subject matter jurisdiction are intertwined, to show that there is a disputed material fact regarding the jurisdictional issue." *Id.* at 228. "We generally analyze jurisdiction separately for each claim." *Trant v. Brazos Valley Solid Waste Mgmt. Agency, Inc.*, 478 S.W.3d 53, 58 (Tex. App.—Houston [14th Dist.] 2015 pet. denied).

## BREACH OF CONTRACT

The State contends it did not waive sovereign immunity for a breach of contract claim and that no contract existed for the payment of relocation benefits. Frank's Nursery contends that it entered into a settlement agreement with the State on a claim for which the State had waived sovereign immunity, namely the settlement of the eminent domain claim. Because we agree with the State that no contract existed for the payment of relocation benefits, we sustain the State's first issue.

"In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). "We examine and

5

consider the entire writing in an effort to harmonize and give effect to all provisions of the contract, so that none will be rendered meaningless." *Trant*, 478 S.W.3d at 59.

The Rule 11 Agreement does not state that relocation expenses would be paid, instead it says that Frank's Nursery "is not hereby waiving and [sic] relocation benefits in addition to the settlement amount stated above." Frank's Nursery argued that in the Rule 11 Agreement the State recognized the "need and obligation to compensate" Frank's Nursery for relocation assistance. However, from the plain language of the Rule 11 Agreement and looking at the entire agreement, there is no promise made on behalf of the State to pay relocation assistance to Frank's Nursery. Instead, it preserves Frank's Nursery's rights to seek relocation benefits that it may be entitled to under the law and that such claims are not waived or included in the Rule 11 Agreement.

On appeal, Frank's Nursery does not directly respond to this argument and instead argues that the State cannot deprive the trial court of jurisdiction by contract. *See Tex. A&M Univ. – Kingsville v. Lawson*, 87 S.W.3d 518 (Tex. 2002). However, we need not reach this issue because we hold that the relocation benefits were not included in the Rule 11 Agreement.

We agree with the State that Frank's Nursery's pleadings allege facts which demonstrate a lack of jurisdiction. *See R & P Enters. v. La Guarta, Gavrel & Kirk, Inc.*, 596 S.W.3d 517, 518 (Tex. 1980) ("If a written instrument is so worded that a court may properly give it a certain or definite legal meaning or interpretation, it is not ambiguous."); *see also Trant*, 478 S.W.3d at 59–60 (interpreting easement agreement and holding the plaintiff's pleading affirmatively negated claim for breach of contract against state agency).

We sustain the State's first issue.

Next the State contends that there is no waiver of immunity expressed by the legislature to bring a claim against the State under section 21.043 of the Property Code. The State also contends that the trial court did not have jurisdiction to consider Frank's Nursery's claims under section 21.043(a) of the Property Code because Frank's Nursery was entitled to reimbursement under another law.

"[T]he Legislature is best positioned to waive or abrogate sovereign immunity 'because this allows the Legislature to protect its policymaking function.'" *Sw. Bell. Tel., L.P. v. Harris Cnty. Toll Rd. Auth.*, 282 S.W.3d 59, 68 (Tex. 2009) (quoting *Tex. Nat. Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 854 (Tex. 2002) (citations omitted)). Waiver must be clear and unambiguous. *Id*. (citing Tex. Gov't Code § 311.034).

> Section 21.043 provides:
>
> A property owner who is permanently displaced from the property owner's . . . place of business and who is not entitled to reimbursement for moving expenses under another law may recover, in addition to the property owner's other damages, the reasonable expenses of moving the property owner's personal property from the dwelling or place of business.

Tex. Prop. Code § 21.043(a).

The State contends there is no express waiver of immunity and, therefore, sovereign immunity bars Frank's Nursery's claim under this statute. However, at least one other appellate court has concluded that section 21.043 is a "sufficiently clear waiver of immunity." *State v. Langley*, 232 S.W.3d 363, 368 (Tex. App.—Tyler 2007, no pet.). Even if we construed this language as an authorization of claims against the State, such claims are limited and would not apply here. *See id*. By its plain language, section 21.043 is limited to those claims where the property

owner is not entitled to reimbursement under another law. *See* Tex. Prop. Code § 21.043(a); *Langley*, 232 S.W.3d at 368 ("Instead, [section 21.043] authorizes, on a limited basis, suits for relocation expenses."). Here, the State contends there is another law that covers Frank's Nursery's claim for reimbursement in section 21.046(b). *See* Tex. Prop. Code § 21.046(b). We agree.

Section 21.046 provides authority for a department or agency of the State to establish a relocation advisory service and, as a cost of acquiring the land, such service must pay relocation expenses when the personal property of a property owner's business is displaced. *See* Tex. Prop. Code § 21.046(b); *see Langley*, 232 S.W.3d at 368. The Texas Department of Transportation has initiated such a program, and it is found in the Texas Administrative Code. *See* 43 Tex. Admin. Code §§ 21.111–21.118.

Here, as in *Langley*, we agree that Frank's Nursery is entitled to seek relocation expenses under section 21.046 and, as a result, section 21.043 does not apply. *See Langley*, 232 S.W.3d at 368. We sustain the State's second issue.

## DECLARATORY JUDGMENT

In its third issue, the State contends that Frank's Nursery's claim for a declaratory judgment is also barred by sovereign immunity. Frank's Nursery contends that the trial court had jurisdiction to render a declaratory judgment to "settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." Frank's Nursery argues that because the declaration sought is whether it is entitled to recover funds under the governing statutes, that such a claim is not barred by sovereign immunity under the Uniform Declaratory Judgments Act. *See* Tex. Civ. Prac. & Rem. Code § 37.002(b). The State contends that Frank's Nursery is attempting to establish its right to a monetary judgment against the State.

8

The Uniform Declaratory Judgment Act (DJA) is not a general waiver of sovereign immunity. *Tex. Parks & Wildlife Dept. v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011) (citing Tex. Civ. Prac. & Rem. Code § 37.006(b)). Instead, the DJA is a procedural device for deciding cases already within the court's jurisdiction. *Id.* Couching a request for relief in terms of declaratory relief does not alter the underlying nature of the suit. *Id.* If the Legislature has not waived sovereign immunity, then sovereign immunity will bar an otherwise proper DJA claim that seeks to establish a right to relief against the State. *Id.*

The DJA waives sovereign immunity in particular cases, such as a declaratory judgment action that challenges the validity of a statute. *Tex. Dept. of Transp. v. Sefzik*, 355 S.W.3d 618, 622 (Tex. 2011). Merely challenging the State's actions under a statute without an express waiver of immunity is insufficient. *See id.* "[W]hen a party brings a declaratory judgment action to interpret an agency's statutory authority, immunity from suit is waived by the [DJA]." *Tex. Mun. Power Agency v. Public Utility Com'n*, 100 S.W.3d 510, 516 (Tex. App.—Austin 2003, pet. denied). This is because actions for statutory interpretation "do not implicate the policy concerns of protecting the legislature's policy-making discretion and avoiding raids on the public treasury embodied in the sovereign immunity doctrine—rather they serve to clarify the rules and requirements imposed by the legislature on the administrative agencies." *Id.*

In its amended petition, Frank's Nursery requested the trial court to render a declaratory judgment that:

a) Frank's Nursery is entitled to relocation funds due to the acquisition of its property by the condemning authorities; and

b) Any deadline that Defendants claim bars the right to relocation funds is moot and void due to the active and ongoing negotiations between Frank's Nursery and Defendants regarding the same.

9

Neither of these requests seeks an interpretation of an agency's statutory authority or challenges the validity of the statute. *See Tex. Mun. Power Agency*, 100 S.W.3d at 516; *Sefzik*, 355 S.W.3d at 622. Instead, Frank's Nursery seeks a determination of whether under the statute it is "entitled to relocation funds," or ultimately, a money judgment against the State. *See City of Houston v. Williams*, 216 S.W.3d 827, 829 (Tex. 2007) ("[I]n every suit against a governmental entity for money damages, a court must first determine the parties' contract or statutory rights; if the sole purpose of such a declaration is to obtain a money judgment, immunity is not waived."); *see also Sefzik*, 355 S.W.3d at 622 ("But Sefzik is not challenging the validity of the statute; instead, he is challenging TxDOT's actions under it, and he does not direct us to any provision of the [DJA] that expressly waives immunity for his claim."). We sustain the State's third issue.

## Exhaustion of Administrative Remedies

In the State's final issue, it argues that Frank's Nursery was required to exhaust its administrative remedies prior to bringing any suit against the State for payment of relocation expenses. Frank's Nursery contends that there is no pervasive regulatory scheme, and therefore, exhaustion is not required. Frank's Nursery also argues that the State vested authority not in an administrative agency, but in a third-party private entity. Finally, Frank's Nursery contends that it is not required to exhaust administrative remedies when it would be futile to do so.

"An agency has exclusive jurisdiction when the Legislature has granted the agency the sole authority to make an initial determination in a dispute." *In re Entergy Corp.*, 142 S.W.3d 316, 321 (Tex. 2004). If an agency has exclusive jurisdiction, a party must exhaust all administrative remedies before seeking review of the agency's action. *Cash Am. Int'l v. Bennett*, 35 S.W.3d 12, 15 (Tex. 2000). "Until the party has exhausted all administrative remedies, the trial court

10

lacks subject matter jurisdiction and must dismiss any claim within the agency's exclusive jurisdiction." *In re Entergy Corp*, 142 S.W.3d at 321–22. Thus, if the State's assertion that the Texas Department of Transportation has exclusive jurisdiction is correct, the trial court lacks jurisdiction over the underlying suit. *See id*. at 322.

"Whether an agency has exclusive jurisdiction depends on statutory interpretation." *Pape Partners, Ltd. v. DRR Family Props., LP*, 645 S.W.3d 267, 272 (Tex. 2022). We look for an express grant of exclusive original jurisdiction or a "pervasive regulatory scheme" showing that the Legislature intended the administrative process to be the exclusive means of remedying the problem. *Id*. (quoting *In re Entergy Corp.*, 142 S.W.3d at 322).

The relevant provisions here are in the Property Code and the Texas Administrative Code. *See* Tex. Prop. Code § 21.046; 43 Tex. Admin. Code §§ 21.111–21.118.

Section 21.046 of the Property Code provides:

(a) A department, agency, instrumentality, or political subdivision of this state shall provide a relocation advisory service for . . . a business concern . . . that is compatible with the Federal Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C.A. 4601, et seq.

(b) This state or a political subdivision of this state shall, as a cost of acquiring real property, pay moving expenses and rental supplements, make relocation payments, provide financial assistance to acquire replacement housing, and compensate for expenses incidental to the transfer of the property if . . . the personal property of a business . . . is displaced in connection with the acquisition.

(c) A department, agency, instrumentality, or political subdivision of this state that initiates a program under Subsection (b) shall adopt rules relating to the administration of the program.

11

(d) Neither this state nor a political subdivision of this state may authorize expenditures under Subsection (b) that exceeds payments authorized under the Federal Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C.A. 4601, et. seq.

Tex. Prop. Code § 21.046.

The Texas Administrative Code provides that certain written notices, including requirements of eligibility, shall be provided to each displacee. *See* 43 Tex. Admin. Code §§ 21.113, 21.114. "Relocation payments and services are applicable to all . . . businesses . . . who are displaced as a result of the acquisition of their real property, in whole or in part, for highway right of way purposes." *Id.* § 21.115. Even without using the department's relocation services, a displacee may be eligible for payments if the relocation meets "all eligibility requirements." *Id.* "When a person is required to relocate as a result of the acquisition of the right-of-way for a highway project, the department will pay the reasonable expenses of relocating the displacee and his or her business and personal property, so long as the eligibility requirements are met." *Id.* § 21.116. "A displacee who is dissatisfied with the department's determination of eligibility or relocation payments and services may request a review by the Relocation Review Committee." *Id.* § 21.118(b). Section 21.118 goes on to detail the review procedures. *See id.*

The Legislature mandates that a "department, agency, instrumentality, or political subdivision of this state *shall* provide a relocation advisory service." *See* Tex. Prop. Code § 21.046(a) (emphasis added). A department that initiates a program to make relocation payments shall adopt rules relating to the administration of the program. *See id.* § 21.046(b), (c). The Texas Administrative Code provides further rules relating to the administration of the program. *See* 43

Tex. Admin. Code §§ 21.111–21.118.  Reading together the Legislature's grant of authority requiring the relocation advisory service and the administrative provisions for obtaining relocation expenses, we conclude that the Legislature intended the administrative process to be the exclusive means of remedying the problem.

Our conclusion is supported by the supreme court's interpretation of another provision providing for relocation expenses within the Transportation Code.  *See Sw. Bell Tel., L.P. v. Harris Cnty. Toll Rd. Auth.*, 282 S.W.3d 59, 68 (Tex. 2009).  In *Southwestern Bell*, the plaintiff telephone company argued that section 251.102 of the Transportation Code created a private cause of action for relocation expenses against the county.  *Id*. at 68.  Section 251.102 of the Transportation Code provided that "[a] county shall include the cost of relocating or adjusting an eligible utility facility in the expense of the right-of-way acquisition."  Tex. Transp. Code § 251.102.  However, because there was no clear and unambiguous waiver of sovereign immunity, the supreme court held that the plaintiff had no statutory cause of action.  *See Sw. Bell Tel.*, 282 S.W.3d at 68.  The court reasoned that "[t]he Legislature may require counties to earmark funds for a particular purpose without necessarily creating a private right of action, because, for example, it expects counties to comply, or because it considers the costs of litigation overly burdensome."  *Id*. at 69.  The supreme court concluded that the plaintiff telephone company had no cause of action against the county for relocation expenses despite the statutory mandate that it be paid those expenses.

Similarly, here the Legislature mandates that a "department, agency, instrumentality, or political subdivision of this state *shall* provide a relocation advisory service" and "shall, as a cost of acquiring real property, pay moving expenses and rental supplements, make relocation payments" among other costs

listed therein. *See* Tex. Prop. Code § 21.046(a), (b). Within section 21.046 there is also no clear and unambiguous waiver of sovereign immunity from suit for these mandatory relocation expenses. Instead, a department that initiates a program to make relocation payments shall adopt rules relating to the administration of the program. *See id.* § 21.046(b), (c). The Texas Administrative Code further provides for payment if the displacee meets all "eligibility requirements." *See* 43 Tex. Admin. Code §§ 21.115, 21.116. Such "eligibility requirements" are required to be delivered to the property owner at the initiation of negotiations for the property. *See id.* § 21.114(1)(A). Though not included in the record, the letter sent to Frank's Nursery by the third-party service indicates that Frank's Nursery would receive a brochure detailing eligibility requirements for relocation assistance. The Texas Administrative Code further provides a means of appealing the department's determination if the displacee is dissatisfied with the outcome. *See id.* § 21.118. The Legislature has established an exclusive method for a displacee to seek relocation costs. *See* Tex. Prop. Code § 21.046; 43 Tex. Admin. Code §§ 21.111–21.118.

Frank's Nursery contends that because exhaustion would be futile it is not required to exhaust its administrative remedies. In cases recognizing a futility defense, the party arguing futility has the burden to show that such efforts are, in fact, futile. *See Isa v. Pub. Util. Comm'n of Tex.*, 528 S.W.3d 609, (Tex. App.—Texarkana 2017, pet. denied); *Ogletree v. Glen Rose Indep. Sch. Dist.*, 314 S.W.3d 450, 454 (Tex. App.—Waco 2010, pet. denied). Here, Frank's Nursery alleged but did not present any evidence of futility.

We sustain the State's fourth issue.

14

Frank's Nursery also asserts that a "claim for full, just, and adequate compensation is not barred by sovereign immunity." However, under this theory of recovery, in order to show that the State or agency is not immune from suit, the plaintiff must allege and provide evidence of a taking under the Texas Constitution. *See* Tex. Const. art. I, § 17. Namely, that "a governmental actor acted intentionally to take or damage property for a public use." *See State v. Holland*, 221 S.W.3d 639, 643 (Tex. 2007). There are no such pleadings in Frank's Nursery's petition. Instead, Frank's Nursery argues that because its claim "flows" from the Texas Constitution, it is not required to plead the elements of a takings claim. Frank's Nursery did not allege a takings claim under the Texas Constitution, or even the elements of such a claim in its petition. Thus, we find its argument that a claim "arising" from condemnation is not barred by immunity unavailing. In *State v. Langley*, the court held that "the Langley's relocation, misrepresentation, and breach of contract claims were not germane to, connected with, or properly defensive to the eminent domain claims brought by the State." 232 S.W.3d 363, 367 (Tex. App.—Tyler 2007, no pet.). Frank's Nursery has not attempted to show under the relevant case law how its claim is "germane to, connected with, or properly defensive to the eminent domain claims." [3] *See id*.

Instead, the cases cited by Frank's Nursery involve plaintiffs alleging takings claims and pleading the elements thereof. *See City of Dallas v. Jennings*, 142 S.W.3d 310, 311 (Tex. 2004) ("They alleged two claims: unconstitutional

---

[3] In the trial court, Frank's asserted that its claims were "germane to, connected with, and properly defensive to the affirmative claims that the State asserted against Frank's Nursery in the condemnation proceeding" and asked the trial court to consider that issue. However, Frank's did not make any legal argument or cite to any legal authority on this point. Instead, the only case cited to, *Langley*, held that similar claims were not germane to, connected with, or properly defensive to eminent domain claims. *See Langley*, 232 S.W.3d at 367.

15

taking and nuisance. Specifically, their pleadings asserted that the City's maintenance of the sewer line 'constituted an unconstitutional taking, damaging, or destruction of plaintiffs' property for public use without adequate compensation.'"); *Webb v. City of Fort Worth*, No. 02-21-00133-CV, 2022 WL 123219, at *1 (Tex. App.—Fort Worth Jan. 13, 2022, no pet.) (mem. op.) ("Webb sought damages for a taking under the Texas Constitution."); *Metro. Theater, LLC v. Yes Prep Pub. Sch., Inc.*, No. 01-15-00480-CV, 2016 WL 743590, *2 (Tex. App.—Houston [1st Dist.] Feb. 25, 2016, no pet.) (mem. op.) ("Metropolitan contends that it presented a viable takings claim because the pleadings before the trial court demonstrate that YES Prep is a governmental entity which took or destroyed Metropolitan's contract with Dow in order to purchase the property itself for public use."). Each of these cases concluded the governmental actor was immune from suit. *See Jennings*, 142 S.W.3d at 312 ("[W]e conclude that there was no intentional taking for which the Jenningses are entitled to compensation."); *Webb*, 2022 WL 123219, at *7 (no evidence of intentional taking); *Metro. Theater, LLC*, 2016 WL 743590, at *5 (no affirmative showing that "YES Prep had the requisite intent to take property under its sovereign powers as required for a constitutional takings claim"). "To establish an inverse condemnation claim, a plaintiff must show that the government intended to or was substantially certain that its actions would take or damage the property for public use; otherwise, the doctrine of governmental immunity bars the claim." *City of Baytown v. Schrock*, 645 S.W.3d 174, 178 (Tex. 2022).

Because Frank's Nursery has not alleged a takings claim under the Texas Constitution and because Frank's Nursery has not shown how its claims are germane to, connected with, or properly defensive to the previously asserted eminent domain claims, we conclude that Frank's Nursery has not demonstrated a

waiver of sovereign immunity from suit through this argument.

## ATTORNEY'S FEES

Frank's Nursery sought attorney's fees through its claim for breach of contract as well as the claim made pursuant to the Texas Declaratory Judgment Act. Because we have concluded that the trial court lacks jurisdiction over both of these claims, there is no basis for Frank's Nursery's attorney's fees claim. We sustain the State's fifth issue.

## CONCLUSION

Having sustained each of the State's issues, we conclude the trial court erred in denying the State's motion to dismiss for want of jurisdiction. We reverse the trial court's order and render judgment granting the State's motion to dismiss for want of subject-matter jurisdiction. *See Harris Cnty. v. Sykes*, 136 S.W.3d 635, 639–40 (Tex. 2004).

/s/     Ken Wise
        Justice


Panel consists of Justices Wise, Bourliot, and Spain.

17