**Affirmed and Opinion filed May 9, 2013.**



In The

# Fourteenth Court of Appeals

NO. 14-11-01115-CV

**SOUTHWESTERN BELL TELEPHONE, L.P., D/B/A AT&T TEXAS, Appellant**

**V.**

**ED EMMETT, EL FRANCO LEE, SYLVIA GARCIA, STEVE RADACK, AND JERRY EVERSOLE, AS MEMBERS OF THE HARRIS COUNTY COMMISSSIONERS' COURT; MICHAEL MARCOTTE, AS DIRECTOR OF THE CITY OF HOUSTON DEPARTMENT OF PUBLIC WORKS AND ENGINEERING; AND THE CITY OF HOUSTON, Appellees**

On Appeal from 189th District Court
Harris County, Texas
Trial Court Cause No. 2007-38986

## O P I N I O N

Southwestern Bell Telephone, L.P., d/b/a AT&T Texas ("AT&T") appeals from orders (1) granting a plea to the jurisdiction filed by County Judge Ed Emmett and Commissioners El Franco Lee, Sylvia Garcia, Steve Radack, and Jerry Eversole in their official capacities (collectively, the "County Commissioners"); (2) granting summary judgment in the alternative in favor of the County Commissioners; (3) granting summary judgment in favor of the City of Houston and Michael S. Marcotte, director of the City of

Houston Department of Public Works and Engineering; and (4) denying AT&T's motion for summary judgment. We affirm.

## BACKGROUND

This appeal stems from a dispute over who must bear the cost of relocating AT&T's telecommunications equipment located in a public right-of-way and attached to Forest Hill Street Bridge in Houston, which spans Brays Bayou near the Ship Channel. The dispute arises in connection with a plan to demolish the existing City-owned bridge and replace it with a longer, wider one as part of a project to widen Brays Bayou.

AT&T says the Flood Control District must bear this cost. The Flood Control District and the City say AT&T must bear it.

AT&T relies upon the following Water Code provision:

> In the event that the district or the water supply corporation, in the exercise of the power of eminent domain or power of relocation or any other power, makes necessary the relocation, raising, lowering, rerouting, or change in grade of or alteration in construction of any road, bridge, highway, railroad, electric transmission line, telegraph, or telephone properties, facilities, or pipelines, all necessary relocations, raising, lowering, rerouting, or change in grade or alteration of construction shall be done at the sole expense of the district or the water supply corporation unless otherwise agreed to in writing.

Tex. Water Code Ann. § 49.223(a) (Vernon 2008). According to AT&T, the Flood Control District "ma[de] necessary" and must pay for the relocation of AT&T's telecommunications equipment attached to the bridge as part of a larger channel-widening program called the "Brays Bayou Flood Damage Reduction Project" – "Project Brays" for short.

Planning for Project Brays has been conducted by the Flood Control District and United States Army Corps of Engineers. The plan contemplates that approximately 30 City-owned bridges will be modified or demolished and rebuilt, including the Forest Hill Street Bridge. The Flood Control District is paying to demolish and reconstruct the bridges as part of Project Brays using contractors and consultants hired and paid for by

the district.

The Flood Control District and the City executed an Interlocal Agreement in 2004 to address control of and responsibility for the City-owned bridges affected by Project Brays. Among other things, the Interlocal Agreement gives the City authority to review and approve bridge drawings and specifications; access bridge construction sites; and maintain and repair the new bridges upon completion. Section 8 of the Interlocal Agreement between the Flood Control District and the City states: "Where the City has the right to require a public utility company . . . to modify and/or replace its facilities at its own cost, the City shall designate the District as the city's project manager, and upon written request . . . direct the public utility company . . . to modify and/or relocate its facilities . . . at no cost to the City or to the District."

On February 8, 2007, the Flood Control District's director sent a letter to the City's director of the Department of Public Works and Engineering. This letter said replacement of the Forest Hill Street Bridge "will require the replacement of various utilities located on the existing bridge" and asked the City to direct AT&T to "modify or relocate" its utilities at AT&T's expense.

On March 9, 2007, the City sent a letter to AT&T in which the City directed AT&T to relocate its facilities attached to the existing Forest Hill Street Bridge. AT&T responded on April 30, 2007; AT&T said it would relocate its facilities "provided that . . . the HCFCD agrees to reimburse AT&T Texas for 100% of the actual costs associated with this relocation." The City replied on May 16, 2007, and stated: "The fact that this Public Works and Engineering project is being undertaken by the Harris County Flood Control District on behalf of the City does not relieve AT&T from the responsibility to relocate." The City's letter continued: "Should we not have an agreed schedule for relocation within 60 days of the Final Notice, the City may act in accordance with Section 40-397."

The City's invocation of Section 40-397 refers to Ordinance No. 2005-371, passed on April 6, 2005. This ordinance amends Chapter 40 of the Code of Ordinances,

3

Houston, Texas, to add a new Article XVIII entitled: "Relocation of Privately-Owned Facilities."

Section 40-393(a) of this article states: "Whenever the city engineer determines, in the exercise of sound engineering judgment, that a facility should be relocated for the accomplishment of a public works project, the owner of the facility shall relocate the facility at the owner's sole expense in accordance with this article." It continues: "In the event that an owner's failure to timely relocate a facility in accordance with this article causes the city to incur expenses, damages, or losses, including loss of grant funds, for any resulting delay, the owner of the facility shall be responsible for the city's expenses, damages, or losses." In turn, section 40-397 sets forth various steps the City can take if an owner fails to relocate at the owner's expense; these steps include the City's ability to "[r]elocate the facility, or cause the facility to be relocated, on behalf of the owner and . . . recover the cost of the relocation from the owner."

Following receipt of the City's letter in May, AT&T filed suit on June 25, 2007. As discussed more fully below, AT&T subsequently amended its petition in an effort to address certain constraints on subject matter jurisdiction. AT&T's third amended petition sought prospective declaratory and injunctive relief against the County Commissioners, Marcotte, and the City. AT&T sought the following declarations with respect to the Flood Control District, the City, and their respective agents and officials.

- Section 49.223 requires the Flood Control District, and not AT&T, to bear costs associated with relocating AT&T's facilities on the Forest Hill Street Bridge.

- Section 49.223 controls over provisions of the City's ordinance and its utility relocation program that impose facility relocation costs in connection with the Forest Hill Street Bridge on AT&T.

- The Flood Control District and the City cannot require AT&T to bear the expense of removing or relocating AT&T's facilities under the ordinance or

4

the utility relocation program in connection with the Forest Hill Street Bridge.

- The Flood Control District and the City cannot take physical possession of AT&T's facilities on the Forest Hill Street Bridge or interfere with AT&T's telecommunications service under the ordinance and the utility relocation program unless they comply with section 49.223.

- The City cannot assess damages or recover relocation costs associated with the Forest Hill Street Bridge from AT&T, or declare that AT&T waived a damages claim, if AT&T fails to provide a satisfactory relocation schedule within the timeframe allotted by the City or fails to comply with the City's relocation schedule.

AT&T also sought prospective injunctive relief to prevent the Flood Control District, the City, and their respective agents and officials from enforcing the ordinance or removing AT&T's facilities on the Forest Hill Street Bridge.

The trial court resolved the case on motions in multiple orders. AT&T challenges the trial court's orders in three issues on appeal, asserting that the trial court erred by (1) granting the County Commissioners' plea to the jurisdiction, traditional motion for summary judgment, and no-evidence motion for summary judgment; (2) granting the City's and Marcotte's no-evidence motion for summary judgment and alternative traditional motion for summary judgment; and (3) denying AT&T's amended motion for summary judgment.

## STANDARDS OF REVIEW

***Plea to the jurisdiction.*** A plea to the jurisdiction seeks dismissal because the trial court lacks subject matter jurisdiction to hear the case. *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). A district court's determination regarding subject matter jurisdiction is a question of law that we review *de novo*. *Tex. Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). The plaintiff must allege facts that

5

affirmatively demonstrate the trial court's subject matter jurisdiction over a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993).

"Whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction is a question of law reviewed *de novo*." *Miranda*, 133 S.W.3d at 226. "Likewise, whether undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction is also a question of law." *Id*. "We construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent." *Id*. Courts do not decide the merits of the case on a plea to the jurisdiction. *See id*.

***Traditional motion for summary judgment.*** A traditional summary judgment is appropriate under Texas Rule of Civil Procedure 166a(c) when a movant establishes that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). A trial court's grant of traditional summary judgment is reviewed *de novo* on appeal. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). An appellate court examines "the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005).

***No-evidence motion for summary judgment.*** A no-evidence summary judgment under Rule 166a(i) is equivalent to a pretrial directed verdict, and the same legal sufficiency standard applies. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003). Summary judgment is appropriate under Rule 166a(i) when there is a complete absence of evidence of a vital fact; the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; the evidence offered to prove a vital fact is no more than a mere scintilla; or the evidence conclusively establishes the opposite of a vital fact. *Id*. at 751. Appellate review is *de novo*. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006).

ANALYSIS

## I.     Subject Matter Jurisdiction

We address subject matter jurisdiction as a threshold matter to determine whether governmental immunity bars AT&T's claims.

"Sovereign immunity protects the State from lawsuits for money damages." *Tex. Natural Res. Conservation Comm'n v. IT-Davy,* 74 S.W.3d 849, 853 (Tex. 2002). "Political subdivisions of the state, including cities, are entitled to such immunity – referred to as governmental immunity – unless it has been waived." *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006) (citing *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003)). Governmental immunity also extends to the Flood Control District as a political subdivision of the state. *Harris Cnty. Flood Control Dist. v. Great Am. Ins. Co.*, 309 S.W.3d 614, 616 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

"Sovereign immunity encompasses immunity from suit, which bars a suit unless the state has consented, and immunity from liability, which protects the state from judgments even if it has consented to suit." *Reata Constr. Corp.*, 197 S.W.3d at 374. "We have held that sovereign immunity from suit deprives a trial court of subject-matter jurisdiction." *Id.*; *see also Miranda*, 133 S.W.3d at 224.

AT&T initially sued only the Flood Control District and the City in 2007. AT&T amended its petition in 2009 to drop the Flood Control District as a defendant in light of *City of El Paso v. Heinrich*, 284 S.W.3d 366, 371-77 (Tex. 2009). In its third amended petition, AT&T added the County Commissioners[1] and Marcotte individually as

---

[1] The Commissioners Court of Harris County serves as the Flood Control District's governing body. Act of May 15, 1937, 45th Leg., R.S., ch. 360, 1937 Tex. Gen. Laws 714. Despite an overlap in geographical jurisdiction and leadership, "[t]he District is a conservation and reclamation district that is separate and distinct from Harris County." *Harris Cnty. Flood Control Dist. v. Great Am. Ins. Co.*, 359 S.W.3d 736, 743 (Tex. App.—Houston [14th Dist.] 2011, pet. denied); *see also Harris Cnty. Flood Control Dist. v. Mann*, 135 Tex. 239, 140 S.W.2d 1098, 1101 (1940).

defendants. AT&T continued to name the City as a defendant.[2]

*Heinrich* explained that "where statutory or constitutional provisions create an entitlement to payment, suits seeking to require state officers to comply with the law are not barred by immunity merely because they compel the state to make those payments." *Heinrich,* 284 S.W.3d at 371 (citing *W.D. Haden Co. v. Dodgen*, 158 Tex. 74, 308 S.W.2d 838, 841 (1958)). "[S]uits to require state officials to comply with statutory or constitutional provisions are not prohibited by sovereign immunity, even if a declaration to that effect compels a payment of money." *Heinrich*, 284 S.W.3d at 372. "To fall within this *ultra vires* exception, a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial task." *Id*.

It follows that suits of this nature "cannot be brought against the state, which retains immunity, but must be brought against the state actors in their individual capacity." *Id*. at 373. "This is true even though the suit is, for all practical purposes, against the state." *Id*. "[A] claimant who successfully proves an *ultra vires* claim is entitled to prospective injunctive relief, as measured from the date of injunction." *Id*. at 376. As the supreme court observed, these circumstances create a "curious situation." *Id*. at 374. "[T]he basis for the *ultra vires* rule is that a government official is not following the law, so that immunity is not implicated, but because the suit is, for all practical purposes, against the state, its remedies must be limited." *Id*.

## A. The County Commissioners

The County Commissioners contend that the *ultra vires* exception to governmental immunity from suit is inapplicable here because AT&T "alleged no actions whatsoever by the Commissioners."

---

[2] AT&T alleged: "The City remains a party to this action because the claims alleged involve the validity of a City ordinance . . . ." *See Heinrich*, 284 S.W.3d at 373 n.6 ("For claims challenging the validity of ordinances or statutes, however, the Declaratory Judgment Act requires that the relevant governmental entities be made parties, and thereby waives immunity.") (citing Tex. Civ. Prac. & Rem. Code § 37.006(b)).

According to the County Commissioners, "AT&T simply alleged that the Flood Control District 'refused to confirm' its 'obligation to bear the expense of relocating AT&T Texas's facilities.'" Because the County Commissioners "had no legal duty to confirm anything to AT&T Texas[,]" the commissioners argue that AT&T's petition "contains no allegation that any officer of the District 'acted without legal authority or failed to perform a purely ministerial act.'" At most, the County Commissioners contend that AT&T alleged they were "threatening to commit *ultra vires* acts." They conclude that dismissal for lack of subject matter jurisdiction was warranted because *Heinrich* "makes no mention of prospective claims, only prospective relief."

AT&T responds that the *Heinrich* exception is satisfied because the Flood Control District asked the City to direct AT&T to relocate its facilities at no cost to the Flood Control District. AT&T subsequently wrote a letter dated April 30, 2007, addressed to the deputy director of the City of Houston Public Works and Engineering Department's Engineering and Construction Division; Tom Rackley of the Flood Control District was cc'd on the letter. AT&T stated in its letter: "AT&T Texas will relocate its facilities provided that the Harris County Flood Control District . . . submits a utility adjustment agreement . . . in which the HCFCD agrees to reimburse AT&T Texas for 100% of the actual costs associated with this relocation." The City responded with a letter dated May 16, 2007, in which it stated as follows: "The fact that this Public Works and Engineering project is being undertaken by the Harris County Flood Control District on behalf of the City does not relieve AT&T from the responsibility to relocate." The letter continues: "Should we not have an agreed schedule for relocation within 60 days of the Final Notice, the City may act in accordance with Section 40-397."

Based on these circumstances, AT&T argues as follows: "[I]f AT&T Texas had complied with the City's relocation directive and waited until the HCFCD refused to compensate it for relocation costs after the fact, AT&T Texas would have no recourse because it would be asserting a claim for damages from which the HCFCD and the Commissioners have governmental immunity." *See, e.g., Rolling Plains Groundwater*

9

*Conservation Dist. v. City of Aspermont*, 353 S.W.3d 756, 760 (Tex. 2011).

We agree with AT&T that the circumstances pleaded here are framed to fit within the *ultra vires* exception described in *Heinrich*. As permitted by *Heinrich*, AT&T sought prospective declaratory and injunctive relief. *See Heinrich*, 284 S.W.3d at 369. Suits such as this to require compliance "with statutory or constitutional provisions are not prohibited by sovereign immunity;" a suit can be predicated on an officer's action undertaken without legal authority, or on an officer's failure to act. *Id*. at 372.

To some degree, the separate inquiries into subject matter jurisdiction and the merits of statutory interpretation unavoidably tend to converge on appeal. Determining whether the specific act requested of but not performed by a government official is sufficiently "ministerial" to fit within the *ultra vires* exception depends in part on what the statute at issue does – or does not – require the official to do. *Cf. Houston Mun. Emps. Pension Sys. v. Ferrell*, 248 S.W.3d 151, 160 (Tex. 2007) (Brister, J., concurring) ("A different case might be presented if the plaintiffs alleged the board was clearly violating some provision of the statute. Article 6243h gives the pension board complete discretion to interpret the statute, but not to violate it."). In the context of this case, we believe the jurisdictional inquiry is appropriately addressed in conjunction with the determination regarding section 49.223's meaning.

We also believe that further uncertainty will be added to an already murky area of the law if we follow the County Commissioners' suggestion to distinguish between more emphatic failures to act – for which subject matter jurisdiction exists under the *ultra vires* exception – and less emphatic failures to act – for which subject matter jurisdiction does not exist. Short of receiving a bill from AT&T for already-incurred relocation expenses and refusing to pay, it is not clear how much more emphatic the targeted failure to act must be to satisfy the County Commissioners' conception of *ultra vires*. As AT&T correctly notes, pursuit of a judgment declaring AT&T's right to reimbursement for already-incurred facility relocation expenses would be fraught with jurisdictional hurdles. *See City of Houston v. Williams*, 216 S.W.3d 827, 828-29 (Tex. 2007) (per curiam)

10

(Retired firefighters could not pursue declaratory judgment action to recover amounts previously withheld from lump-sum termination payments in violation of statute; "[t]he only injury the retired firefighters alleged has already occurred, leaving them with only one plausible remedy – an award of money damages.")

### B.    Marcotte

The convergence of subject matter jurisdiction and the merits of statutory interpretation is illustrated by Marcotte's contentions.  He argues that there is no evidence of an *ultra vires* act on his part because "the District had no statutory obligations under the Water Code, and the City is empowered by both common law and statute to require AT&T to relocate its facilities . . . ."  As framed by Marcotte, his subject matter jurisdiction argument is co-extensive with the merits of interpreting section 49.223 and will be addressed below.

## II.    Statutory Interpretation

### A.    Determining the Governing Statutory Interpretation Standard

The parties launch their respective interpretations of section 49.223 from different starting points.

The County Commissioners and Marcotte invoke the "strict construction" standard applied in *Southwestern Bell Telephone, L.P. v. Harris County Toll Road Authority*, 282 S.W.3d 59, 64 (Tex. 2009).  They advocate strict construction in reliance on the following precept:  "'[I]f a statute creates a liability unknown to the common law . . . the statute will be strictly construed in the sense that it will not be extended beyond its plain meaning or applied to cases not clearly within its purview.'"  *Id.* (citing *Satterfield v. Satterfield,* 448 S.W.2d 456, 459 (Tex. 1969)).  According to the County Commissioners and Marcotte, section 49.223 creates "a liability unknown to the common law" because the common law rule is that "a utility forced to relocate from a public right-of-way must do so at its own expense." *Id*. at 62.

AT&T counters by arguing that section 49.223 should be liberally construed to

11

achieve its purpose. *See* Tex. Gov't Code Ann. § 312.006(b) (Vernon 2013). AT&T argues that the strict construction standard applied in *Southwestern Bell* does not reach this dispute because "AT&T Texas does not assert any claim for 'liability' against the HCFCD, nor does it contend that section 49.223 of the Texas Water Code gives it a cause of action against the HCFCD for damages." AT&T stresses that it "asserts a declaratory judgment claim to resolve a controversy over the proper interpretation of a statute" rather than a liability claim seeking damages. AT&T further argues that Texas courts have applied the strict construction standard articulated in *Southwestern Bell* "only . . . in cases where a party asserted a statutory claim for damages or a common law claim for damages based on an underlying statutory duty."

The parties' competing arguments make it appropriate to discuss *Southwestern Bell* in some detail.

The case arose when Southwestern Bell billed Harris County for the cost of relocating underground telecommunication facilities located in the public right-of-way along Westpark Road in connection with construction of the Westpark Tollway. *Sw. Bell Tel., L.P.,* 282 S.W.3d at 60-61. After Harris County refused to pay, Southwestern Bell sued seeking reimbursement under the Transportation Code; it also asserted a claim for inverse condemnation under the Texas Constitution. *See* Tex. Const. art. I, §§ 17, 19; Tex. Transp. Code Ann. § 251.102 (Vernon 1999). The trial court granted summary judgment in favor of Southwestern Bell. *Sw. Bell Tel., L.P.,* 28 S.W.3d at 61. The court of appeals reversed, holding that Harris County was immune from suit on the statutory claim and that Southwestern Bell had no vested property interest in the right-of-way for purposes of an inverse condemnation claim. *Id.* The Texas Supreme Court affirmed the court of appeals, holding that (1) "whatever interest SBC has, that interest did not include the right to require the county to pay for relocation of its facilities;" and (2) "section 251.102 does not clearly waive governmental immunity, and . . . Harris County has not otherwise waived its immunity from suit . . . ." *Id.* at 61, 70.

In analyzing whether Southwestern Bell possessed a vested property interest in the

12

right-of-way, the supreme court began with the "'long-established common law principle'" that "'a utility forced to relocate from a public right-of-way must do so at its own expense.'" *Id.* at 62 (quoting *Norfolk Redevelopment & Hous. Auth. v. Chesapeake & Potomac Tel. Co.*, 464 U.S. 30, 34 (1983)). The Texas Supreme Court continued: "We have said that '[i]n the absence of assumption by the state of part of the expense, it is clear that [utility companies] could be required to remove at their own expense any installations owned by them and located in public rights of way whenever such relocation is made necessary by highway improvements.'" *Id.* (quoting *State v. City of Austin*, 160 Tex. 348, 331 S.W.2d 737, 741 (1960)); *see also City of San Antonio v. Bexar Metro. Water Dist.*, 309 S.W.2d 491, 492 (Tex. Civ. App.—San Antonio 1958, writ ref'd) ("The main purposes of roads and streets are for travel and transportation, and while public utilities may use such roads and streets for the laying of their telegraph, telephone and water lines, and for other purposes, such uses are subservient to the main uses and purposes of such roads and streets.").[3]

Southwestern Bell contended that, notwithstanding the common law rule, Transportation Code section 251.102 required Harris County to pay for telephone facility relocation costs necessitated by construction of the Westpark Tollway. Southwestern Bell relied on section 251.102's provision stating that "'[a] county shall include the cost of relocating or adjusting an eligible utility facility in the expense of right-of-way acquisition.'" *Sw. Bell Tel., L.P.,* 282 S.W.3d at 64 (quoting Tex. Transp. Code Ann. § 251.102).

The supreme court rejected this contention. It noted that a statute creating "'a liability unknown to the common law . . . will be strictly construed in the sense that it will not be extended beyond its plain meaning or applied to cases not clearly within its purview.'" *Sw. Bell Tel., L.P.* 282 S.W.3d at 64 (quoting *Satterfield*, 448 S.W.2d at 459). Applying this strict construction standard, the supreme court concluded that section

---

[3] The Forest Hill Street Bridge is a "street" for purposes of this appeal. *See City of Houston v. Goings*, 795 S.W.2d 829, 832 (Tex. App.—Houston [14th Dist.] 1990, writ denied) ("A public bridge forming a connecting link in a street or highway is a part of that street or highway.").

251.102 did not overcome the long-established common law principle placing responsibility for relocation costs on the utility because (1) this provision failed to "clearly delineate classes of relocations that are eligible for reimbursement;" and (2) Southwestern Bell's relocation costs were "not clearly within the statute's purview." *Id.* at 67.

AT&T does not quarrel with the common law principle's existence. Instead, it argues that this principle and the accompanying strict construction standard do not apply here. AT&T emphasizes that, as permitted by *Heinrich*, it seeks prospective declaratory and injunctive relief against individual governmental officers for facility relocation expenses that have not yet been incurred; it does not assert a "liability" claim against the Flood Control District or the City under section 49.223 seeking money damages for already-incurred facility relocation expenses. It also does not assert a takings claim. Therefore, AT&T contends that it does not invoke section 49.223 to create "'a liability unknown to the common law.'" *See Sw. Bell Tel., L.P.*, 28 S.W.3d at 64 (quoting *Satterfield*, 448 S.W.2d at 459).

We reject AT&T's contention because it elevates form over substance. AT&T's permissible reliance on the *ultra vires* pleading device mandated by *Heinrich* does not change AT&T's ultimate aim – namely, to establish "an entitlement to payment" on its part for facility relocation expenses in connection with reconstruction of the Forest Hill Street Bridge. *See Heinrich*, 284 S.W.3d at 371.

AT&T has sued seeking prospective relief "to require" governmental officers "to comply" with statutory provisions that AT&T relies upon to "create an entitlement to payment." *See id.* In appropriate circumstances, governmental immunity does not bar suits "to require state officials to comply with statutory or constitutional provisions . . . even if a declaration to that effect compels the payment of money." *Id.* at 372. A judgment establishing AT&T's asserted statutory entitlement to payment in these circumstances would establish liability for utility relocation expenses unknown to the common law regardless of whether the judgment does so by (1) awarding money

14

damages to AT&T for already-incurred expenses; or (2) prospectively declaring that governmental officials must comply with a statutory directive that "compels the payment of money" to AT&T for such expenses when they are incurred. *See id.* The net effect is the same.

We conclude that the strict construction standard discussed in *Southwestern Bell* applies here. We now examine section 49.223 in light of that standard.

## B.      Applying the Statutory Interpretation Standard

The parties' statutory interpretation fight focuses on this portion of section 49.223(a): "In the event that the district . . . in the exercise of the power of eminent domain or power of relocation or any other power, makes necessary the relocation . . . of any . . . telephone properties, facilities, or pipelines . . . all necessary relocations . . . shall be done at the sole expense of the district . . . ." It is undisputed that the Flood Control District is a "district" for these purposes within the meaning of the Water Code. *See* Tex. Water Code § 49.001(a)(1) (Vernon 2008).

AT&T contends that it is entitled to summary judgment in its favor as a matter of law because "section 49.223 . . . applies any time the HCFCD 'makes necessary' the relocation or alteration of 'any road, bridge, highway, railroad, electric transmission line, telegraph, or telephone properties, facilities, or pipelines.'" According to AT&T, "[U]nless the HCFCD is acting outside of its authority (which no one contends in this case), whenever the HCFCD makes a relocation necessary, it has a statutory duty to bear the expense of relocating AT&T Texas's facilities." It continues: "The undisputed facts show that the HCFCD made the relocation of AT&T Texas's facilities necessary." AT&T concludes: "In short, the undisputed evidence shows that the HCFCD has made it necessary for AT&T Texas to relocate its facilities from the Forest Hill Bridge through the exercise of its power to plan and execute a flood control project in Harris County."

The County Commissioners respond that "for the statute to be applicable the act in question must be that of the **District**, not that of a third party. Further, the act must have

15

been done in the exercise of a **power**, not merely a right or a function. Finally, the act must make **necessary** the relocation of property." They contend that all three prerequisites are missing here and stress that "[t]he request for relocation of the facilities came from the City, not the Flood Control District."

Marcotte and the City likewise contend that "it was the City – not the District – that 'made necessary the relocation' . . . [and] . . . exercised the power to direct AT&T to move its wires." Quoting section 311.001 of the Texas Transportation Code, Marcotte and the City further argue that "[a]s a Texas home-rule municipal corporation, the City of Houston has 'exclusive control over and under the streets of the municipality,' . . . ." Additionally, they argue that the City has "'paramount jurisdiction'" by virtue of its status as a Texas home-rule municipal corporation. *See City of Breckenridge v. Stephens Cnty.,* 120 Tex. 318, 40 S.W.2d 43, 44 (1931); *City of Laredo v. Webb Cnty.*, 220 S.W.3d 571, 575-76 (Tex. App.—Austin 2007, no pet.).[4]

Resolution of this issue turns on the following facts established in the summary judgment record.

- The Flood Control District is widening the channels of Brays Bayou as part of Project Brays.

- Project Brays will require approximately 30 bridges to be modified or demolished and rebuilt. Doing so will facilitate enlargement of the main channel and construction of a regional storm water detention system.

---

[4] "The City of Houston is a home-rule city, deriving its power from article XI, section 5 of the Texas Constitution." *S. Crushed Concrete, LLC v. City of Houston*, No. 11-0270, 2013 WL 561468 at *2 (Tex. Feb. 15, 2013) (citing Tex. Const. art. XI, § 5). "Home-rule cities have the full power of self-government and look to the Legislature, not for grants of power, but only for limitations on their powers." *S. Crushed Concrete, LLC*, 2013 WL 561468 at *2 (citing *Lower Colo. River Auth. v. City of San Marcos*, 523 S.W.2d 641, 643 (Tex. 1975), and *Forwood v. City of Taylor*, 147 Tex. 161, 214 S.W.2d 282 (1948)). "[I]f the Legislature decides to preempt a subject matter normally within a home-rule city's broad powers, it must do so with 'unmistakable clarity.'" *In re Sanchez*, 81 S.W.3d 794, 796 (Tex. 2002) (quoting *Dallas Merchant's & Concessionaire's Ass'n v. City of Dallas*, 852 S.W.2d 489, 491 (Tex. 1993)). AT&T does not contend on appeal that section 49.223 speaks with the "unmistakable clarity" necessary to preempt the City's relocation ordinance.

16

- The Flood Control District is paying to reconstruct the bridges as part of Project Brays; the work is being conducted by contractors and consultants hired and paid for by the district.

- Planning for Project Brays was done by the United States Army Corps of Engineers and the Flood Control District.

- The Corps and the Flood Control District identified Forest Hill Street Bridge, located in and owned by the City, as one of the bridges to be replaced as part of Project Brays.

- The Flood Control District is paying for demolition of the current Forest Hill Street Bridge and for design and construction of its replacement.

- The Flood Control District's manager for Project Brays, Raouf Farid, testified that the district is replacing the Forest Hill Street Bridge "under the supervision and approval of every aspect of it by the City of Houston."

- AT&T owns telecommunications facilities that are located in a public right-of-way and cross Brays Bayou at the Forest Hill Street Bridge; these facilities are attached to the bridge.

- Section 8 of the Interlocal Agreement between the Flood Control District and the City states: "Where the City has the right to require a public utility company . . . to modify and/or replace its facilities at its own cost, the City shall designate the District as the City's project manager, and upon written request . . . direct the public utility company . . . to modify and/or relocate its facilities . . . at no cost to the City or to the District."

- Pursuant to section 8 of the Interlocal Agreement, the Flood Control District's director sent a letter dated February 8, 2007, to the City's director of the Department of Public Works and Engineering in which he (1) said replacement of the Forest Hill Street Bridge "will require the replacement of various utilities located on the existing bridge;" and (2) asked the City to

17

direct AT&T to "modify or relocate" its utilities at AT&T's expense in connection with replacement of the Forest Hill Street Bridge.

- The City sent a March 9, 2007, letter to AT&T in which the City directed AT&T to relocate its facilities at the Forest Hill Street Bridge. AT&T responded in a letter dated April 30, 2007, in which it stated that it would relocate its facilities "provided that . . . the HCFCD agrees to reimburse AT&T Texas for 100% of the actual costs associated with this location." The City replied in a May 16, 2007, letter in which it stated: "The fact that this Public Works and Engineering project is being undertaken by the Harris County Flood Control District on behalf of the City does not relieve AT&T from the responsibility to relocate." The letter continues: "Should we not have an agreed schedule for relocation within 60 days of the Final Notice, the City may act in accordance with Section 40-397."

- The Flood Control District will voluntarily build a new Forest Hill Street Bridge as part of Project Brays to satisfy the City's standards, criteria, and requirements, which the City subsequently will maintain.

- Farid answered "[n]ot necessarily" to a question asking: "Is the fact that the − Brays Bayou is being widened, does that contribute to the need to replace certain bridges?" Farid testified that the bridges "could be left alone." He added, "We can leave it like it is and have a narrow channel there as we have right now."

Neither AT&T nor the appellees contend that these circumstances give rise to fact issues precluding summary judgment. To the contrary, all parties contend that the record establishes the propriety of summary judgment in their favor.

We conclude based on this record that AT&T cannot obtain summary judgment in its favor under section 49.223, and that the trial court correctly granted summary judgment in favor of the appellees, because the "relocation costs in this case are not

18

clearly within the statute's purview . . . ." *See Sw. Bell Tel., L.P.* 282 S.W.3d at 67. This is so for two reasons.

The first reason is the City's involvement in this process. The City's involvement is important because the statutory payment inquiry focuses on whether the Flood Control District "ma[de] necessary the relocation" of AT&T's facilities "in the exercise of" the district's power.

AT&T notes that the Flood Control District has the power to devise plans and construct works to lessen and control floods in Harris County; remove obstructions from streams and water courses; use the beds and banks of bayous, rivers, and streams; require relocation of roads and highways; exercise the right of eminent domain; and "[t]o do any and all other acts or things necessary or proper to carry into effect" its enumerated powers. Act of May 15, 1937, 45th Leg., ch. 360 §§ 2.e, 2.j., 9 & 10. AT&T thus contends: "These rights and powers plainly include the power to demolish and reconstruct the Forest Hill Bridge and to thereby 'make necessary' the relocation of AT&T Texas's facilities on the bridge."

AT&T's contention erroneously links analysis of the statute's "makes necessary" language to the broader demolition and reconstruction of this bridge as part of the larger Project Brays program. The correct analysis in this case focuses more specifically on whether the district "ma[de] necessary" the relocation of AT&T's facilities. The Flood Control District asked the City to exercise the City's authority to order the relocation, and the City complied. The Flood Control District's larger planning and funding activities may have been "necessary components of" Project Brays and "but for" causes of the relocation, but these activities were "certainly not sufficient on their own to cause the project to be undertaken" or the facilities to be relocated. *See Air Liquide Am. Corp. v. U.S. Army Corps of Eng'rs*, 359 F.3d 358, 363 (5th Cir. 2004).

The circumstances in *Air Liquide* parallel the facts here. The case arose when Air Liquide and other pipeline owners sued the Port of Houston and the United States Army Corps of Engineers; the pipeline owners asserted multiple claims in connection with costs

19

attributable to relocating pipelines under the Houston Ship Channel as part of a project undertaken by the Port and the Corps to widen and deepen the channel. *Id*. at 360-61. The project was authorized by federal legislation that required the pipeline owners to bear pipeline relocation costs. *Id*. at 361. The Port and the Corps signed a Project Cooperation Agreement to begin the channel widening and deepening project. *Id*. Acting on a request by the Port, the Corps then invoked its federal statutory authority to require the owners to relocate their pipelines at the owners' expense. *Id*.

Among other claims, the pipeline owners sought a declaration that the Port was responsible for pipeline relocation costs because it had "required" the relocation. *See* Tex. Water Code Ann. § 60.102(a) (Vernon 2004) ("If a district in the exercise of the powers conferred by this subchapter or in the exercise of the power of eminent domain or the police power requires the relocating, raising, lowering, rerouting, or changing in grade, or altering in the construction of any . . . pipeline, the relocating, raising, lowering, rerouting, changing in grade, or altering of construction shall be done at the sole expense of the district.").

The Fifth Circuit rejected this claim, concluding that section 60.102(a) "is not applicable because the Port did not *require* the relocation – the Corps did." *Air Liquide Am. Corp.*, 359 S.W.3d at 362 (original emphasis). The Fifth Circuit's conclusion did not change even though the Port's request was the catalyst for the Corps' issuance of relocation notices to the pipeline owners. *Id*. at 363. "By requiring removal of an obstacle to a navigable waterway, the Corps was acting pursuant to power delegated to it by Congress." *Id*. "It was pursuant to this power, not the Port's request, that the Corps required the relocation." *Id*.

Similar reasoning applies in this case. Here, as in *Air Liquide*, the "district" at issue contracted with another entity that (1) had authority to compel relocation; and (2) was not subject to the statutory directive to pay relocation costs. *Id.*; *cf. City of San Antonio*, 309 S.W.2d at 492 ("The City of San Antonio, by statute and by the provisions of its charter, has control of its streets and can regulate their use by utility companies or

20

anyone else."). These circumstances do not clearly demonstrate that the Flood Control District has "ma[de] necessary" the relocation of AT&T's facilities attached to the Forest Hill Street Bridge, or that the district has done so "in the exercise of" the district's power.

AT&T characterizes the City's relocation directive as "irrelevant" because section 49.223 focuses on "whether the HCFCD caused or initiated the event or condition that necessitates the relocation . . . ." This contention essentially advocates the use of a "but for" standard; the Fifth Circuit rejected such a standard in *Air Liquide*, and we do as well. *See Air Liquide Am. Corp.*, 359 F.3d at 363.

As AT&T does in this appeal, the pipeline owners tried to bolster their position in *Air Liquide* by citing a Texas Attorney General opinion addressing a repealed provision of the Water Code. *See* Op. Tex. Att'y Gen. No. MW-412 (1981). The repealed provision, Texas Water Code section 50.052, provided that if the Flood Control District "requires" the relocation of "telephone lines, conduits, poles, properties, facilities, or pipelines," the relocation "shall be done at the sole expense of the district . . . ." The Flood Control District sought an opinion on whether this statute required it to bear the costs for lengthening a bridge. *Id.* The Texas Attorney General opined: "[I]f the district widens the channel so as to render the bridge unusable, the district may reasonably be said to have acted to require the 'relocation . . . rerouting . . . . or alteration in construction of . . . properties.'" *Id.* The Fifth Circuit distinguished the attorney general opinion because "the Corps, not the Port, required Owners to relocate their pipelines." *Air Liquide Am. Corp.*, 359 F.3d at 363. The circumstances addressed in the attorney general's opinion likewise are distinguishable from those at issue in this case because the City required AT&T to relocate its facilities.[5]

The second reason is project manager Farid's testimony. He testified that the Forest Hill Street Bridge "could be left alone." He further testified: "We can leave it like

---

[5] AT&T also cites *Bullock v. Greer*, 353 S.W.2d 929, 930 (Tex. Civ. App.—Eastland 1962, writ ref'd n.r.e.), to support its position on "makes necessary." *Bullock* is inapposite because it addresses "whether the Water District had the power to condemn appellants' land for the relocation and raising" of a highway to accommodate a dam. *Id.* This case presents no issue with respect to condemnation.

it is and have a narrow channel there as we have right now." Even if the statutory inquiry is broadened to encompass the Flood Control District's actions in managing Project Brays as a "but for" cause of relocation, it is by no means clear on this record that Project Brays "makes necessary" the demolition of Forest Hill Street Bridge or the relocation of facilities currently attached to the bridge.

Under these circumstances, the relocation costs at issue are "not clearly within the . . . purview" of section 49.223. *Sw. Bell Tel., L.P.* 282 S.W.3d at 64 (quoting *Satterfield*, 448 S.W.2d at 459). Because AT&T has not established its entitlement to payment under section 49.223 for the relocation costs at issue, the trial court properly granted summary judgment in favor of the County Commissioners, the City, and Marcotte, and properly granted summary judgment against AT&T.

## CONCLUSION

We affirm the trial court's orders granting summary judgment against AT&T, and in favor of the appellees.

/s/    William J. Boyce
           Justice

Panel consists of Justices Boyce and McCally and Senior Justice Mirabal.[6]

---

[6] Senior Justice Margaret Garner Mirabal sitting by assignment.